**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WALTER RANSOME,** | : | **CIVIL NO. 1:09-CV-604** |
| | : | |
| **Plaintiff,** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **VINCENT MOONEY and** | : | |
| **MICHAEL GOYNE** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

In this civil rights action we are called upon, once again,  to revisit the question of when an inmate may attempt to hold a supervisory prison official personally liable for an Eighth Amendment violation premised on deliberate indifference to the prisoner's medical needs. In November of 2009, we found that the Plaintiff, Walter Ransome, a state inmate, had failed to state a viable civil rights claim under the Eighth Amendment against the Deputy Superintendent at SCI-Dallas, Vincent Mooney. (Doc. 52.) We, therefore, recommended dismissal  Ransome's complaint against Mooney, but further recommended that this dismissal be entered without prejudice to the Plaintiff being granted leave to amend his complaint to try to address the deficiencies identified in this first report and recommendation.(Id.)

On December 22, 2009, Ransome filed an amended complaint in this matter, which re-alleged an Eighth Amendment claim against Defendant Mooney. (Doc. 53.) Mooney has now moved to dismiss this amended complaint, arguing that it suffers from the same flaws that compelled dismissal of the original complaint against Mooney, in that it failed to allege any personal involvement by this prison supervisor in any alleged deprivation of Ransome's constitutional rights.

For the reasons set forth below, we conclude that this complaint is still fatally flawed as to Defendant Mooney, and we recommend that it be dismissed with prejudice. We also recommend that a newly alleged retaliation claim lodged by Ransome in this amended complaint also be dismissed, but that this dismissal be entered without prejudice to Ransome amending his complaint to attempt to allege a viable cause of action for retaliation.

## II.    Statement of Facts and of the Case

This case arises out of various medical grievances lodged by Walter Ransome, a state inmate who allegedly suffers from an array of serious physical and mental disabilities, against prison staff who endeavored to assign him to work duties at SCI-Dallas in 2008. Upon being transferred to SCI-Dallas, Ransome alleged that he began receiving work assignments that were inconsistent with what prison officials had previously recognized as his medical limitations. Ransome alleged that he initially

attempted to address these matters through the prison grievance system. Thus, on November 26, 2008, Ransome filed an "Official Inmate Grievance" in which he alleged that he is not medically cleared to work, but his block officer "informed [him] that [he] would no longer receive (G.L.P.) [sic] or inmate state pay, unless I would begin to use a mop on the block." ( Doc. 29,  Exhibit A-1.)  On December 8, 2008, Unit Manager Goyne, the first-level grievance reviewing official, provided the "Initial Review Response" to this first grievance, which specifically stated that Goyne "reviewed your employment restrictions with medical staff and was told that you can work as a block janitor. You were removed from GLP [General Labor Pool] because you refused to work when requested by your block officer."  (Doc. 29, Ex. A-2.) Ransome then alleged that on December 10, 2008, he submitted an appeal of the Initial Review Response to Grievance No. 252065. (Doc. 1,  Complaint, p. 4.) Indeed, a copy of this alleged December 10, 2008 appeal is attached to Ransome's Complaint. (Doc.1, and Doc. 29, Ex. B-1.)  Ransome contends that when he did not receive a response to that appeal of his first grievance, he filed second "Official Inmate Grievance". (Doc. 29, Ex. A-3, Doc. 1, Complaint, p. 4.)

Despite filing these grievances with Unit Manager Goynes, Ransome insisted in his complaint that Goynes placed him on work assignments that were inconsistent with his medical restrictions, endangering his health and evidencing deliberate indifference to what Ransome claims were medical restrictions that the Department

of Corrections had previously acknowledged in his case. (Doc.1.) Thus, liberally construed, Ransome's complaint alleged an Eighth Amendment violation premised upon deliberate indifference by prison staff to his medical needs. (Id.) The complaint then contained specific factual averments tying one of the named Defendants, Michael Goynes, to this alleged constitutional deprivation. (Id.) The complaint, however, also named a second individual, Vincent Mooney, the Deputy Superintendent as the prison, as a Defendant in this action. (Id.)

Yet, while the original complaint contained a series of recitals regarding Ransome's medical condition and prison work assignments, factual recitals which form the basis for any Eighth Amendment claim, notably absent from the original complaint was any reference to Defendant Mooney in any of these factual averments. Indeed, the only factual allegation made against Mooney in the original complaint was that he failed to adequately respond to Ransome's concerns after the events which gave rise to this complaint. According to Ransome, "you generally have ten (10) working days to receive the response from the Deputy Superintendent [f]or Facility Management," but he alleges that he never received a response to his grievance from Mooney. (Doc. 1, p. 4.) He further alleged that Mooney "chose to take the stance that [he] did not knowledge [sic] of the paperwork and chose to ignore my request to find out what happen [sic] to my official response on paper." (Doc. 1, pp.3-4.) Despite this paucity of factual allegations made against Mooney, Ransome asserted, in a

conclusory fashion, that Mooney should also be held personally responsible for violating his constitutional rights.

On November 30, 2009 we recommended that this complaint be dismissed as to Defendant Mooney because the allegations set forth in the complaint did not meet the demanding legal standard for prison supervisory liability for an Eighth Amendment violation.(Doc. 52) Mindful of the fact, that *pro se* litigants should be given every opportunity to sustain their claims in court, we recommended, however, that this dismissal be without prejudice to the Plaintiff attempting to articulate a factual basis for liability by this prison supervisor in an amended complaint. (Id.)

Our recommendation was adopted by the district court, which dismissed Defendant Mooney but allowed Ransome leave to amend his complaint. (Doc. 58). Ransome, in turn, filed an amended complaint on December 22, 2009, which endeavored to address the fundamental defects in his initial complaint identified for him by the court. (Doc. 53.)

In our prior report and recommendation we advised Ransome that he could not premise liability against a prison supervisor simply based upon the Defendant's supervisory position. Nor could he base a claim of a constitutional violation on a mere failure by a prison supervisor to respond favorably to an inmate complaint. We also informed Ransome that, to sustain this claim, he was required to plead facts which would give rise to a plausible claim against this prison supervisor, and which alleged

personal involvement by the prison supervisor in acts of deliberate indifference to his medical needs.

Despite these admonitions, as to Defendant Mooney, Ransome's amended complaint largely parrots his original, flawed complaint. It repeats allegations that Mooney was a supervisor at SCI-Dallas. (Doc. 53, at 1-3), and again alleges that he complained to Mooney, an act which Ransome alleges without further factual support "makes him personally liable as a matter of law and fact." (Id. at 2.) The amended complaint goes on, without further explanation, to allege that Ransome is "suffering Official Retaliation for filing a Grievance." (Id. at 5) Notably absent from the complaint are any factual allegations regarding who has retaliated against him, or what shape that retaliation has taken.

Noting these flaws, the defendants have filed a motion to dismiss Defendant Mooney from this case, and to dismiss Ransome's belated retaliation claim from the amended complaint. (Doc. 59.) This motion has been fully briefed by the parties (Docs. 60, 61, and 66), and is now ripe for resolution. For the reasons set forth below, we conclude that this complaint is still fatally flawed as to Defendant Mooney, and we recommend that it be dismissed with prejudice. We also recommend that a newly alleged retaliation claim lodged by Ransome also be dismissed, but that this dismissal be entered without prejudice to Ransome amending his complaint to attempt to allege a viable cause of action.

### III.    Discussion

### A.    Rule 12(b)(6)– The Legal Standard.

The Defendants have filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).    With respect to this benchmark standard for assessing the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has recently described the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips</u> [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983) As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. at 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather,

in conducting a review of the adequacy of complaint, the Supreme Court has advised

trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain

more than mere legal labels and conclusions. Rather, a complaint must recite factual

allegations sufficient to raise the Plaintiff's claimed right to relief beyond the level

of mere speculation. As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state
> a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal conclusions. Second, a District Court must then
> determine whether the facts alleged in the complaint are sufficient to
> show that the plaintiff has a "plausible claim for relief." In other words,
> a complaint must do more than allege the plaintiff's entitlement to relief.
> A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In our view, these heightened pleading standards apply to all aspects of the

Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this

analysis both when assessing the adequacy of the factual assertions set forth in the complaint, and when examining whether the complaint states a valid cause of action against the various named Defendants in their individual and official capacities. Conducting this threshold legal analysis we find that Ransome's complaint deficient on a number of grounds and recommend that Ransome's claims be dismissed, in part, without prejudice to allowing Ransome to attempt to timely amend and correct his pleadings.

> **B.** **Legal Standards Governing Supervisory Responsibility for Eighth Amendment Deliberate Indifference Claims in a Prison Medical Context.**

In his amended complaint, Ransome attempts to re-allege a cause of action against the Deputy Superintendent at SCI-Dallas, Vincent Mooney, and seeks to hold this prison supervisor personally liable for violating Ransome's rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to this inmate's medical needs. Ransome faces an exacting burden in advancing an Eighth Amendment claim against this supervisory prison official in his individual capacity. To sustain such a claim, Ransome must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-

defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel,256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.) In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id . at 837." Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims against prison supervisors premised upon claims of inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his

constitutional right to adequate medical care in accordance with this standard, Ransome is required to point to evidence that demonstrates (1) a serious medical need; and, (2) acts or omissions by prison officials that indicate deliberate indifference to that need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some medical attention has been offered to the inmate. Clark v. Doe,

2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997). In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

There is a necessary corollary to this principle, limiting the reach of the Eighth Amendment in a prison medical setting. In this case, the prison grievances that form the basis of Ransome's complaint have previously been filed as exhibits in this case. A review of these grievances reveals that prison officials consulted with medical staff before making work assignments for this inmate, and that medical staff cleared Ransome for light duty work. (Doc. 29, Ex. A-2).

In a case such as this, where the record reflects that prison officials sought, and received, medical guidance regarding an inmate's physical limitations, it is also well-established that these non-medical correctional staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner whose condition had been assessed] by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d. Cir. 1993). The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit in the following terms:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference

Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004).

Applying this standard, courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections

staff who refer inmate medical concerns to physicians may not be held personally liable for medically-based Eighth Amendment claims. See, e.g., Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006); Spruill v. Gillis, supra; Durmer v. O'Connor, supra; Garvey v. Martinez, No. 08-2217, 2010 WL 569852 (M.D. Pa. Feb. 11, 2010); Hodge v. United States. No. 06-1622, 2007 WL 2571938 (M.D. Pa. Aug. 31, 2007).

This rule applies specifically to those prison staff whose involvement in a medical matter consists solely of examining, reviewing and addressing inmate complaints concerning medical issues. Where non-medical corrections staff simply review a grievance, and refer an inmate to medical personnel, it is clear that "merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim." Garvey v. Martinez, 2010 WL 569852, 7 (M.D.Pa. Feb. 11, 2010)(citations omitted); see Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006).

Indeed, as a general rule inmates do not have a constitutional right to a prison grievance system. See Jones, 433 U.S. at 137-138; Speight v. Sims, No. 08-2038, 283 Fed. Appx. 880, 2008 WL 2600723 at *1 (3d. Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with response to an inmate's grievances does not support a constitutional claim. See

also Alexander v. Gennarini, 144 Fed. Appx. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). Furthermore, it is well established that in a suit brought under 42 U.S.C. § 1983, a defendant must be shown to have had personal involvement in an alleged constitutional violation, and the doctrine of respondeat superior will not support a finding of liability. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

Because civil liability under § 1983 requires personal involvement by a state official in the alleged deprivation of some constitutional right, it is apparent that a mere "allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." Greenwaldt v. Coughlin, N0. 93 Civ. 6551, 1995 U.S. Dist. LEXIS 5144, at *11 (S.D.N.Y. Apr. 19, 1995). Thus, in a case like this, where Defendant Mooney's only alleged involvement with the Plaintiff consists of a purported failure to respond to an inmate complaint, that "failure of a prison official

to provide a favorable response to an inmate grievance is not a federal constitutional violation." Gordon v. Vaughn, No. 99-1511, 1999 U.S. Dist. LEXIS 7060, at * 4 (E.D. Pa. May 12, 1999).

Nor can a claim of a constitutional deprivation be premised on the fact that the named Defendant was a prison supervisor when the incidents set forth in the complaint occurred. Quite the contrary, to state a claim under §1983, the plaintiff must show that the supervisory defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Liability under § 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

Thus, to state a cause of action against a defendant in a civil rights action, a plaintiff must make some showing of personal involvement by the supervisory personnel. <u>See</u> <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976). The supervising official's misconduct cannot have been simply a failure to act, but the official must have played an "affirmative part" in the alleged misconduct. <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986). As the United States Court of Appeals for the Third Circuit observed in <u>Brown</u> <u>v. Muhlenberg Township</u>, 269 F.3d 205 (3d Cir. 2001):

> "[I]t is not enough for the plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." Rather, the plaintiff must identify specific acts of the supervisor that evidence deliberate indifference and persuade the court that there is a "relationship between the identified deficiency and the ultimate injury."

<u>Id</u>. at 216, (quoting <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir. 1989)).

As explained in <u>Beers-Capitol</u>, in cases based on allegations of deliberate indifference on the part of prison officials or other supervisory defendants, the Supreme Court has "rejected an objective test for deliberate indifference; instead it looked to what the prison official actually knew rather than what a reasonable official in his position would have known." <u>Id.</u> at 131. Specifically, the Supreme Court "held that 'a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.'" <u>Id.</u> (quoting <u>Farmer</u>, 511

U.S. at 837). This requirement of actual knowledge on the part of supervisory officials "means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at 837).

At the same time, this subjective standard does not insulate officials from liability where such officials choose to remain deliberately indifferent to an excessive or substantial or serious risk of harm to inmates. The Supreme Court explained:

> We are no more persuaded by petitioner's argument that, without an objective test for deliberate indifference, prison officials will be free to ignore obvious dangers to inmates. Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm would actually befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.

Farmer, 511 U.S. at 842. The Supreme Court also noted that a supervisory defendant's knowledge of a risk may be proved through circumstantial evidence, so that "a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. Although the Third Circuit has recognized that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim, see, e.g, Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005), the Third Circuit did interpret Farmer to signal that "a plaintiff could make out a deliberate indifference case by showing that prison officials simply were aware of a general risk to inmates in the plaintiff's situation[.]" However, in order to show

deliberate indifference in this fashion, a plaintiff would need to come forward with evidence to showing a substantial basis for demonstrating that a prison official was deliberately indifferent in the face of information or indicators that presented a substantial risk to inmate safety.  See Farmer, 511 U.S. at 842-43 ("If an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence would permit a trier of fact to find that the defendant-official had actual knowledge of the risk.") (emphasis added).

In addition to the foregoing analysis applicable to claims brought against supervisors under the Eighth Amendment alleging deliberate indifference to a known excessive risk, the Third Circuit also recognizes that supervisors may be exposed to liability on the basis that they maintained deficient policies that resulted in the plaintiff sustaining an Eighth Amendment injury.  In these kinds of cases based upon allegations of deficient policies, the Third Circuit has fashioned a four-part test based upon the reasoning of City of Canton v. Harris, 489 U.S. 378 (1989), for supervisory liability on an Eighth Amendment claim for failure to supervise.  Under this test, "the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the

Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and, (4) the injury resulted from the policy or practice." Beers-Capitol, 256 F.3d at 134 (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). Accordingly, these approaches are summarized as follows:

> In sum, to make out a claim of deliberate indifference based on direct liability (i.e., insofar as the defendants are alleged to have known of and ignored the particular risk that Whetzel posed, the plaintiffs must meet the test from Farmer v. Brennan: They must show that the defendants knew or were aware of and disregarded an excessive risk to the plaintiffs' health or safety, and they can show this by establishing that the risk was obvious. For the plaintiffs' claims seeking to hold supervisors liable for their deficient policies, Sample's four-part test provides the analytical structure for determining whether the policymakers exhibited deliberate indifference to the plaintiffs' risk of injury, it being simply the deliberate indifference test applied to the specific situation of a policymaker.

Id. at 135.

### C.    Ransome's Amended Complaint Fails to State a Legally Sufficient Cause of Action Against Defendant Mooney

Viewed against these constitutional benchmarks, Ransome's amended complaint still fails to state a viable cause of action against Deputy Superintendent Mooney. At the outset, Ransome's recitals that Mooney was a prison supervisor do not provide a grounds for holding this Defendant personally liable since it is clear that a prison official's supervisory status, standing alone, is insufficient to trigger personal liability

in an Eighth Amendment context. See  Rode  v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Moreover, beyond these efforts to hold Mooney liable on a legally discredited *respondeat superior* claim, Ransome's amended complaint simply repeats his prior assertion that he complained to Mooney about his medical work restrictions, but nothing was done to resolve his medically-based concerns about his work assignments. This factual assertion, which simply parrots the claims that were previously considered, and rejected, as a basis for personal liability for Defendant Mooney in Ransome's original complaint, fails for several reasons.

First, in this case, Ransome's prison grievances have previously been filed as exhibits in this case. Those exhibits reveal that prison officials consulted with medical staff before making work assignments for this inmate, and that medical staff cleared Ransome for light duty work. (Doc. 29, Ex. A-2). In a case such as this, where the record reflects that prison officials sought, and received, medical guidance regarding an inmate's physical limitations, it is also well-established that these non-medical correctional staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d. Cir. 1993).

Second, where a non-medical corrections supervisor simply receives an inmate medical complaint that has been referred to medical personnel, it is clear that "merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim." Garvey v. Martinez, 2010 WL 569852, 7 (M.D.Pa. Feb. 11, 2010)(citations omitted); see Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006).

More fundamentally, Ransome's efforts to premise Eighth Amendment liability on Mooney's allegedly inadequate response to his complaint is problematic since inmates do not have a constitutional right to a prison grievance system. See Jones, 433 U.S. at 137-138; Speight v. Sims, No. 08-2038, 283 Fed. Appx. 880, 2008 WL 2600723 at *1 (3d. Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, as a general rule, mere dissatisfaction with response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a

prison administrative appeal process does not implicate a constitutional concern.")

Furthermore, as we have previously observed, reliance on nothing more than a staff failure to respond to an inmate grievance as a basis for civil liability for a constitutional tort is particularly problematic here since it appears under the Department of Corrections regulations that Defendant Mooney was not charged with the duty of replying to Ransome's complaint. The Corrections Department's administrative directive entitled "Inmate Grievance System," DC-ADM 804 ("804"), provides a multi-step inmate administrative grievance appeal process.[1] Pursuant to the DC-ADM 804, inmates first file grievances with their institution's Grievance Coordinator, who designates a staff member as the Grievance Officer for purposes of responding to the grievance. In this case, that official would have been Unit Manager Goynes. If the inmate is dissatisfied with the initial review, the inmate "may appeal an Initial Review decision, or grievance restriction, to the Facility Manager in writing, within 10 working days from the date of the Initial Review decision or notice of a grievance restriction." See DC-ADM 804, Section VI.C.1.b. The "Facility Manager"

---

[1]The Department's Administrative Directives are available on its web site http://www.cor.state.pa.us, and are facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. This policy, therefore, is a matter as to which this Court may take judicial notice pursuant to F.R.E. 201(d) and (b)(2).

is defined in the DC-ADM 804 as the Superintendent of a State Correctional facility, not the Deputy Superintendent, Mooney. See DC-ADM 804, Section IV.G.

Finally, Ransome may not hold Mooney liable as a prison supervisor on the basis that he imposed deficient policies that resulted in the Plaintiff sustaining an Eighth Amendment injury. In cases based upon allegations of deficient policies, the Third Circuit has fashioned a four-part test for supervisory liability on an Eighth Amendment claim. Under this test, "the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and, (4) the injury resulted from the policy or practice." Beers-Capitol, 256 F.3d at 134.

In this case Ransome has not pleaded, or proven, the existence of an unreasonably dangerous prison policy or practice fostered by Mooney as a prison supervisor. Indeed, his complaints seem to arise out of specific, individual acts, rather than some institutional policy. In the absence of any such allegations of an unreasonable policy or practice, supervisor liability simply will not lie against Deputy Superintendent Mooney in this case.

In short, despite our attempts to provide Ransome with an opportunity to articulate a claim of supervisory liability, Ransome's amended complaint still fails to

state a valid cause of action against Deputy Superintendent Mooney. The amended complaint continues to contain no factual allegations that would permit a finding that Mooney's conduct met the subjective standard for Eighth Amendment claims, deliberate indifference, which requires that the prison official-defendant must actually have known or been aware of an excessive risk to inmate safety. Furthermore, there are no factual recitals relating to Mooney which would permit a finding of personal involvement in the alleged wrongdoing. The on-going failure to plead facts relating to Mooney's involvement in this conduct is fatal here since individual liability under § 1983 cannot be predicated solely on the principle of respondeat superior. Without the inclusion of some further well-pleaded factual allegations in the amended complaint, Ransome's claim against Mooney remains nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which as a legal matter] do not suffice." Ashcroft v. Iqbal, supra 127 S.Ct. at 1979. Therefore, Defendant Mooney is entitled to be dismissed from this action. Since the Plaintiff has already been afforded the opportunity to correct the deficiencies identified in the original complaint, has failed to state a viable civil rights cause of action against Defendant Mooney, and the factual and legal grounds proffered in support of the complaint make it clear that he has no right to relief, granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir.

2004). Therefore, it is recommended that the complaint be dismissed as to Defendant Mooney without further leave to amend.

> ### D. In its Current Form, Ransome's Retaliation Claim Fails to State a Valid Cause of Action and Should Be Dismissed Without Prejudice

Finally, in his amended complaint Ransome goes on, without further explanation to allege that Ransome is "suffering Official Retaliation for filing a Grievance." (Doc. 53. at 5.) This assertion is not further explained in the amended complaint, and there are no factual averments to support this legal conclusion. Thus, in its current form, the complaint makes no factual allegations regarding who has retaliated against him, or what shape that retaliation has allegedly taken.

The Defendants have moved to dismiss this retaliation claim, arguing that it is legally insufficient in its present form. We agree. In order to prove a claim for First Amendment retaliation, a plaintiff-inmate must initially establish that he engaged in conduct that was constitutionally protected. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). If the plaintiff makes this initial showing, he must next show that he was subjected to some sort of adverse action, and that the plaintiff's protected conduct was a substantial motivating factor in the defendants' conduct towards him. Id.; see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). If the plaintiff makes such a showing, the burden then shifts to the defendants to show that they would have taken the same action for reasons reasonably related to a legitimate

penological interest.  Rauser, 241 F.3d at 334; see also Carter v. McGrady, 292 F.3d 152, 154 (3d Cir. 2002).

In this case, Ransome's failure to allege anything in his amended complaint beyond the legal conclusion that he is "suffering Official Retaliation for filing a Grievance," (Doc. 53. at 5), makes it impossible to assess the merits of this claim, which is first raised in this summary fashion in this amended complaint.  Since Ransome's assertions as to the retaliation claim are presently nothing more "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which as a legal matter] do not suffice,"  Ashcroft v. Iqbal, supra 127 S.Ct. at 1979, the Defendants are entitled to dismissal of this claim. We continue to recognize, however, that in civil rights cases plaintiffs should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend on would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, in this case it is recommended that the Plaintiff's retaliation claim be dismissed without prejudice to the Plaintiff being afforded leave to amend his pleadings to state a viable cause of action, provided that he acts without undue delay.

## IV.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED as follows:

1. The Plaintiff's amended complaint against Defendant Mooney fails to state a valid cause of action under the Eighth Amendment and should be DISMISSED for failure to state a claim upon which relief can be granted. Since the Plaintiff has been afforded the opportunity to correct the deficiencies identified in the original complaint, has failed to state a viable civil rights cause of action against Defendant Mooney, and the factual and legal grounds proffered in support of the complaint make it clear that he has no right to relief, granting further leave to amend on this claim would be futile and result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, it is recommended that the complaint be dismissed as to Defendant Mooney without further leave to amend.

2. With respect to the Defendants' motion to dismiss the retaliation claim set forth in the Plaintiff's amended complaint, since Ransome's assertions as to the retaliation claim are presently nothing more "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which as a legal matter] do not suffice," Ashcroft v. Iqbal, supra 127 S.Ct. at 1979, IT IS RECOMMENDED that the motion to dismiss be GRANTED, without prejudice to the Plaintiff being afforded leave to amend his pleadings to state a viable cause of action, provided that he acts without undue delay.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 9th day of April, 2010.

*S/Martin C. Carlson*
**United States Magistrate Judge**