## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WALTER RANSOME,** | : | **CIVIL NO. 1:09-CV-604** |
| | : | |
| **Plaintiff,** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **VINCENT MOONEY and** | : | |
| **MICHAEL GOYNE,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.     Statement of Facts and of the Case

In this civil rights action we are called upon, once again,  to revisit the question of when an inmate may attempt to hold a prison official personally liable for an allegedly retaliatory transfer within the prison. Specifically, the Plaintiff, Walter Ransome, invites us to infer retaliatory motives from cell transfers which occurred four to nine months after he engaged in protected activity by filing this lawsuit. Furthermore, Ransome urges us to find these transfers to be retaliatory in nature even though one transfer actually was favorable to him, and entailed a transfer to the cell block which he preferred.

We believe that the court should decline Ransome's invitation to infer retaliation from these temporally remote and equivocal events. Therefore,  we recommend that Ransome's complaint be dismissed since Ransome has failed to

establish a viable retaliation claim. Specifically, we find that his complaint does not provide grounds for concluding, based upon the temporal proximity of events, that the Plaintiff was the subject of retaliatory cell transfers within the prison after he filed this civil lawsuit.

This case began on April 2, 2009, when Walter Ransome, a state prisoner, filed a *pro se* complaint in federal court, naming two corrections officials–Michael Goyne, a Unit Manager at SCI Dallas and Vincent Mooney the Deputy Superintendent at SCI Dallas– as Defendants. (Doc. 1.) In his initial complaint, Ransome, a state inmate who allegedly suffers from an array of serious physical and mental disabilities, claimed that upon being transferred to SCI-Dallas in 2008, he received work assignments that were inconsistent with what prison officials had previously recognized as his medical limitations. Ransome alleged that he protested these work assignments but was nonetheless assigned to work that endangered his health. (Id.) According to Ransome, by placing him on work assignments that were inconsistent with his medical restrictions, prison staff endangered his health and evidenced deliberate indifference to what Ransome claims were medical restrictions that the Department of Corrections had previously acknowledged. (Doc.1.) Thus, liberally construed, Ransome's complaint alleged an Eighth Amendment violation premised upon deliberate indifference by prison staff to his medical needs. (Id.) The complaint then contained

factual averments tying one of the named Defendants, Michael Goynes, to this alleged constitutional deprivation. (Id.) The complaint, however, also named a second individual, Vincent Mooney, the Deputy Superintendent as the prison, as a Defendant in this action. (Id.) While the original complaint contained a series of recitals regarding Ransome's medical condition and prison work assignments, factual recitals which formed the basis for his Eighth Amendment claim, notably absent from the original complaint was any reference to Defendant Mooney in any of these factual averments. (Id.) Accordingly, in November of 2009, we found that Ransome had failed to state a viable civil rights claim under the Eighth Amendment against Mooney. (Doc. 52.) We, therefore, recommended dismissal of Ransome's complaint against Mooney, but further recommended that this dismissal be entered without prejudice to the Plaintiff being granted leave to amend his complaint to try to address the deficiencies identified in this first report and recommendation. (Id.)

While this report and recommendation was pending, on December 22, 2009, Ransome filed an amended complaint in this matter, which attempted to re-allege an Eighth Amendment claim against Defendant Mooney. (Doc. 53.) In addition, the amended complaint went on, without further explanation, to allege that Ransome was "suffering Official Retaliation for filing a Grievance." (Id. at 5) Notably absent from this first amended complaint were any factual allegations regarding who had retaliated

against Ransome, when this alleged retaliation had occurred, or what shape that retaliation had taken.

Presented with this first amended complaint, the Defendants, once again, moved to dismiss this amended complaint, arguing that it suffered from the same flaws that compelled dismissal of the original complaint against Mooney, in that it failed to allege any personal involvement by this prison supervisor in any alleged deprivation of Ransome's constitutional rights. On April 9, 2010, we concluded that this amended complaint was still fatally flawed as to Defendant Mooney, and we recommended that it be dismissed with prejudice. We also recommended that a newly alleged retaliation claim lodged by Ransome in this amended complaint also be dismissed, but that this dismissal be entered without prejudice to Ransome amending his complaint to attempt to allege a viable cause of action based upon alleged retaliation against the Plaintiff. (Doc. 67.)

On June 15, 2010, the district court entered an order adopting this report and recommendation, and dismissed both Ransome's complaint against |Defendant Mooney and the retaliation claim set forth in a summary fashion in this amended complaint. (Doc. 75.) That order , however, noted that the retaliation claim was dismissed without prejudice to permitting Ransome to attempt to allege well-pleaded facts giving rise to a viable retaliation claim, provided that Ransome filed an amended complaint no later than July 6, 2010. (Id.)

On July 8, 2010, Ransome filed a document, styled "Claim of Official Retaliation," which we will liberally construe as a second amended complaint. (Doc. (Doc. 76.) In this pleading, Ransome endeavored to comply with this Court's order and specifically articulate the legal and factual grounds for his retaliation claim, stating as follows:

> [T]he plaintiff . . . has suffered Official Retaliation, by the Defendants for filing this Civil Action:
>
> 2009– Plaintiff files this Civil Action against the Defendants . . . .
>
> August 12, 2009, the Defendants arbitrarily moved [the Plaintiff] from L-Block (the Disability Block) which is closest to Medical, to the furthest block, (J-Block).
>
> October, 2009– The plaintiff . . . was finally returned to the Medical Block, (L-Block) after complaining.
> . . . .
> November 12, 2009– The Plaintiff . . . without warning, or rational reasons, was again moved off of L-Block to the next to the furthest block (I-Block), against his request . . ..
>
> January 25, 2010– despite his request to move back to L-Block, (for Mental and Physical Health Care). The Plaintiff . . . was again moved to the furthest block (J-Block) where he is presently housed.

(Doc. 76.)

As to the involvement of the named Defendants in these cell transfer decisions, in his second amended complaint, Ransome simply alleged that: "Defendant Vincent Mooney is in charge of the daily Operations of SCI Dallas", and "Defendant (Michael P. Goyne) is a Correctional Officer at SCI Dallas, and works on L-Block, and is a

member of the Union." (Id.) On the basis of these spare assertions, Ransome then alleged that, "Both defendants have personal Control, care and Custody over the Plaintiff." (Id.) Notably absent from this second amended complaint was any allegation of direct personal involvement by either Defendant in these cell transfer decisions. Having made these factual assertions, Ransome then contended that "[t]he timing and chronology of these events are circumstantial proof of [t]his Official retaliation claim[];" and alleged that this claimed circumstantial proof established "a causal connection" between the filing of his lawsuit in April, 2009, and the series of cell transfers which were conducted by prison staff four to nine months later, between August 2009 and January 2010. (Id.)

Presented with these new allegations, the Defendants moved, yet again, to dismiss this second amended complaint, alleging that these averments are inadequate to establish a viable retaliation claim. (Doc. 77.) This motion has been fully briefed by the parties, (Docs. 78 and, 80, and 81) and is ripe for resolution. For the reasons set forth below, it is recommended that the motion to dismiss the retaliation claim set forth in the second amended complaint be granted.

## II.    **Discussion**

## A.    **Rule 12(b)(6)– The Legal Standard.**

The Defendants have filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).     With respect to this benchmark standard for assessing the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has recently described the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d

–7–

1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983) As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. at 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

[B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

[A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In our view, these heightened pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the

complaint, and when examining whether the complaint states a valid cause of action against the various named defendants in their individual and official capacities.

## B. Legal Standards Governing Inmate Retaliation Claims

In his second amended complaint, Ransome attempts to allege a cause of action against prison officials based upon allegedly retaliatory transfers within the prison, transfers that occurred four to nine months following the inmate's filing of this lawsuit in federal court. Ransome makes this claim wholly on the basis of circumstantial evidence, asserting that "[t]he timing and chronology of these events are circumstantial proof of [t]his Official retaliation claim[]." (Doc. 76.)

Ransome faces a demanding burden of proof in attempting to allege such a retaliation claim. Inmates like Ransome frequently invite courts to infer retaliatory motives to cell assignments and other prison policies. Yet, these invitations, while frequently made, are rarely embraced by the courts. Compare, DeFranco v. Wolfe, No. 08-1957, 2010 WL 2762968 (3d Cir. July 14, 2010)(denying inmate cell transfer retaliation claim); Alexander v. Fitch, No. 07-1732, 2010 WL 1257709 (W.D. Pa. March 26, 2010)(same); Carpenter v. Kloptoski, No. 08-2233, 2010 WL 891825 (M.D. Pa. March 10, 2010)(same); Solan v. Ranck, No. 06-49, 2007 WL 141918 (M.D.Pa. Jan. 18, 2007)(denying retaliation claim, in part); with Curtician v. Kessler, No. 07-286, 2009 WL 2448106 (W.D. Pa. Aug. 7, 2009)(factual issues preclude dismissal of inmate cell transfer retaliation claim).

Rather, a prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights must first prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002). With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). Examples of adverse actions that have, in certain cases, been found to support a retaliation claim include filing false misconduct reports, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), transferring a prisoner to another prison, Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001), and placing a prisoner in administrative custody, Allah, 229 F.3d at 225.

The third essential element to a retaliation claim is that there be a causal link between the exercise of a constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34. To establish this third, and crucial, component to a constitutional retaliation claim, causation, Ransome must make an exacting showing. In this setting:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir.1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir.2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Moreover, when examining these causation issues, we are specifically admonished that:

> A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate. Consequently, a putative plaintiff by engaging in protected activity might be able to insulate himself from actions adverse to him that a public actor should take. The point we make is not theoretical as we do not doubt that public actors are well aware that persons disappointed with official decisions and actions frequently bring litigation against the actors responsible for the decisions or actions in their individual capacities, and the actors surely would want to avoid such unpleasant events. Thus, it would be natural for a public actor to attempt to head off a putative plaintiff with the unwarranted expenditure of public funds. Courts by their decisions should not encourage such activity and, by enforcing the requirement that a plaintiff show causation in a retaliation case, can avoid doing so as they will protect the public actor from unjustified litigation for his appropriate conduct. In this regard we recognize that often public actors such as those in this case must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

<u>Id.</u> at 267-68.

Mindful of these concerns, courts have in the past carefully scrutinized inmate claims of retaliation premised solely on circumstantial proof of a temporal proximity between the plaintiff's conduct and allegedly retaliatory acts. Indeed, this Court has spoken directly to the issue of what must be shown to state a valid complaint in this factual context, noting that:

> To establish the causation element of a retaliation claim, a plaintiff must prove that his or her participation in a protected activity motivated the defendant to perform the retaliatory act. <u>Ambrose v. Twp. of Robinson</u>, 303 F.3d 488, 493 (3d Cir.2002); <u>Meenan v. Harrison</u>, Civ. A. No. 3:03-CV-1300, 2006 WL 1000032, at *4 (M.D.Pa. Apr.13, 2006) (observing that a plaintiff must demonstrate that the exercise of First Amendment rights "played some substantial role" in the defendant's action). The temporal proximity of a retaliatory act to a plaintiff's exercise of his or her First Amendment rights is probative, but not dispositive, of the causation element. <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 512 (3d Cir.2003); <u>see also Kachmar v. Sungard Data Sys., Inc.</u>, 109 F.3d 173, 178 (3d Cir.1997) (stating that "temporal proximity merely provides an evidentiary basis from which an inference can be drawn"). For temporal proximity alone to establish causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." <u>Marasco</u>, 318 F.3d at 512 (quoting <u>Krouse v. Am. Sterilizer Co.</u>, 126 F.3d 494, 503 (3d Cir.1997)). In the employment context, the Third Circuit Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation, <u>see Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 279 & n. 5 (3d Cir.2000), whereas a temporal proximity of ten days is sufficient to establish causation only when accompanied by other evidence of an employer's wrongdoing, <u>Shellenberger v. Summit Bancorp, Inc.</u>, 318 F.3d 183, 189 (3d Cir.2003). This suggests that the temporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.

Conklin v. Warrington Tp., No. 06-2245, 2009 WL 1227950, *3 (M.D.Pa. April 30,2009)

Applying this standard, courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks or months separated the plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation. Thus, "[o]ur sister courts have held that a temporal proximity of as little as seventeen days was insufficient to establish causation. See Killen v. N.W. Human Servs., Inc., No. 06-4100, 2007 WL 2684541, at *8 (E.D.Pa. Sept.7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation); see also Farrell, 206 F.3d at 279 n. 6 (suggesting that temporal proximity of seven weeks would be insufficient to establish causation); Smith v. ABF Freight Sys., Inc., No. 04-2231, 2007 WL 3231969, at *11 (M.D.Pa. Oct.29, 2007) (holding that temporal proximity of one and one-half months was insufficient to establish causation); Mar v. City of McKeesport, No. 05-19, 2007 WL 2769718, at *4 (W.D.Pa. Sept.20, 2007) (holding that temporal proximity of three months was insufficient to establish causation)." Fischer v. Transue, 04-2756, 2008 WL 3981521, *10 (M.D.Pa. Aug. 22, 2008)(holding that temporal proximity of three weeks was insufficient to establish causation).

In practice, application of these legal tenets has routinely led to the rejection of retaliation claims as legally insufficient when those claims are like the retaliation

assertion made here by Ransome: An assertion of retaliation based solely on circumstantial proof of some temporal link between the Plaintiff's conduct and the Defendants' actions when, in fact, the evidence shows that these events are separated by months. See, e.g., DeFranco v. Wolfe, No. 08-1957, 2010 WL 2762968 (3d Cir. July 14, 2010)(denying inmate cell transfer retaliation claim, two months temporal proximity insufficient); Bailey v. Commercial National Insurance Co., 267 F.App'x., 167 (3d Cir. 2008)(employment discrimination-retaliation case, four months temporal proximity insufficient); Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir.1997) (3-month period insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir.1992) (4-month period insufficient); Conklin v. Warrington Tp., No. 06-2245, 2009 WL 1227950 (M.D.Pa. April 30, 2009)(two months temporal proximity insufficient); Rogers v. Delaware, Dept. of Public Safety/DMV 541 F.Supp.2d 623, 627 (D.Del. 2008)(10 months insufficient); Brown v. Boeing, 468 F.Supp.2d 729 (E.D.Pa. 2007)(3-4 months insufficient); Lumban-Tobing v. Potter, No. 04-979, 2005 WL 2100691 (M.D. Pa. Aug. 30, 2005)(9 months insufficient temporal proximity, but other proof creates factual issue precluding summary judgment).

Finally, if a plaintiff discharges his obligation to satisfy this three-part *prima facie* test, the burden then shifts to the defendant to prove by a preponderance of the evidence that he or she would have made the same decision absent the protected conduct for reasons reasonably related to penological interest. Carter, 292 F.3d at 158.

"This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Rauser, 241 F.3d at 334.

### C.    Ransome's Retaliation Claim Fails to State a Valid Cause of Action and Should Be Dismissed

Judged against these standards, Ransome's retaliation claim clearly fails as a legal matter. In his second amended complaint, Ransome candidly identified this retaliation claim as a circumstantial claim based solely on a claimed temporal proximity, stating that "[t]he timing and chronology of these events are circumstantial proof of [t]his Official retaliation claim[];" and alleging that this circumstantial proof established "a causal connection" between the filing of his lawsuit in April, 2009, and the series of cell transfers which were conducted by prison staff four to nine months later. (Doc. 76.)

Yet, it is clear that the cell transfers about which Ransome complains occurred months after his constitutionally protected activity in filing this lawsuit. In this setting, where four to nine months separate the Plaintiff's protected activities from the Defendants' conduct, an inference of causation cannot fairly be drawn based solely upon an alleged temporal proximity, and Ransome's complaint should be dismissed.

See, e.g., DeFranco v. Wolfe, No. 08-1957, 2010 WL 2762968 (3d Cir. July 14, 2010)(denying inmate cell transfer retaliation claim, two months temporal proximity insufficient); Bailey v. Commercial National Insurance Co., 267 F.App'x., 167 (3d Cir. 2008)(employment discrimination-retaliation case, four months temporal proximity insufficient); Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir.1997) (3-month period insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir.1992) (4-month period insufficient); Conklin v. Warrington Tp., No. 06-2245, 2009 WL 1227950 (M.D.Pa. April 30, 2009)(two months temporal proximity insufficient); Rogers v. Delaware, Dept. of Public Safety/DMV 541 F.Supp.2d 623, 627 (D.Del.,2008)(10 months insufficient); Brown v. Boeing, 468 F.Supp.2d 729 (E.D.Pa. 2007)(3-4 months insufficient); Lumban-Tobing v. Potter, No. 04-979, 2005 WL 2100691 (M.D. Pa. Aug. 30, 2005)(9 months insufficient temporal proximity, but other proof creates factual issue precluding summary judgment).

This principle applies with particular force here, since the chronology of these cell transfers actually rebuts any claim by Ransome that these actions represented a concerted pattern of retaliatory conduct. As Ransome himself acknowledges, at least one of these transfers actually benefitted him, by transferring him to the cell block he sought for a one month period from October through November, 2009. (Doc. 76.) Thus, in this case the well-pleaded facts presented by Ransome show that four to nine months separated his constitutionally-protected activities from the allegedly retaliatory

actions of the Defendants. As a matter of law, this period of time separating these events is simply too great to support an inference of causation. Moreover, in this case factually the cell transfers about which Ransome complains do not independently support an inference of a consistent pattern of retaliation, since at least one of those transfers was an action that was favorable to Ransome. Where the allegedly retaliatory actions of the Defendants are at best equivocal in nature, and those actions are temporally remote from the Plaintiff's protected activities, a retaliation claim like that made by Ransome simply fails as a matter of law.

Finally, we note that Ransome's second amended complaint remains flawed in another fundamental respect. As we have previously observed, a claim of a constitutional deprivation cannot simply be premised on the fact that the named Defendant was a prison supervisor when the incidents set forth in the complaint occurred. Quite the contrary, to state a claim under §1983, the Plaintiff must show that the supervisory Defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Liability under § 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

In this case, with respect to the Defendants' personal involvement in these transfers Ransome's second amended complaint merely alleges that "Defendant Vincent Mooney is in charge of the daily Operations of SCI Dallas", and "Defendant (Michael P. Goyne) is a Correctional Officer at SCI Dallas, and works on L-Block, and is a member fo the Union." (Doc. 76.) Thus, according to Ransome, "Both defendants have personal Control, care and Custody over the Plaintiff." (Id.) Notably absent from this second amended complaint was any allegation of direct personal involvement by either Defendant in these actual cell transfer decisions. In our view, these allegations are inadequate to state the level of personal involvement necessary to trigger individual culpability and liability under §1983.

In short, in this case, Ransome's assertions as to the retaliation claim set forth in his second amended complaint remain little more "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which as a legal matter] do not suffice," Ashcroft v. Iqbal, supra 127 S.Ct. at 1979. We

recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, <u>See Fletcher-Hardee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). In this case, we offered Ransome an opportunity to amend his pleading in a way which would cure these defects, but Ransome has not been able to cure these defects.

Since the Plaintiff has been afforded the opportunity to correct the deficiencies identified in the retaliation claim set forth in the prior complaint, has failed to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of the complaint make it clear that the Plaintiff has no right to relief, granting further leave to amend would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, it is recommended that the second amended complaint be dismissed without further leave to amend.

### III.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the motion to dismiss the retaliation claim set forth in the Plaintiff's second amended complaint (Doc. 77) be granted.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 1st day of October, 2010.

_**S/Martin C. Carlson**_
Martin C. Carlson
United States Magistrate Judge